**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN ANDERSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>NIELSEN HOLDINGS PLC, DAVID KENNY, JAMES A. ATTWOOD, JR., THOMAS H. CASTRO, GUERRINO DE LUCA, KAREN M. HOGUET, HARISH MANWANI, JANICE MARINELLI MAZZA, JONATHAN MILLER, ROBERT C. POZEN, DAVID RAWLINSON, NANCY TELLEM, JAVIER G. TERUEL, and LAUREN ZALAZNICK,<br><br>                    Defendants, | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Bryan Anderson ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Nielsen Holdings plc ("Nielsen" or the "Company") and Nielsen's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company's Global Connect business to Indy US Bidco, LLC and Indy Dutch Bidco B.V., affiliates of Advent International (collectively "Advent").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on December 23, 2020. The Proxy recommends that Nielsen stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Nielsen's Global Connect business is acquired by Advent. The Proposed Transaction was first disclosed on November 1, 2020, when Nielsen and Advent announced that they had entered into a stock purchase agreement (the "Agreement") pursuant to which Advent will acquire all the equity interests of Nielsen subsidiaries that contain the Global Connect business. The deal is valued at approximately $2.7 billion and is expected to close in the second quarter of 2021.

3.     The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Nielsen management, as well as the financial analyses conducted by J.P. Morgan Securities LLC ("JPMorgan"), Nielsen's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Nielsen's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Nielsen.

2

6.      Defendant Nielsen is a corporation organized and existing under the laws of England and Wales. The Company's principal executive offices are located at 85 Broad Street, New York, New York 10004 and Nielsen House, John Smith Drive, Oxford, Oxfordshire OX4 2WB, United Kingdom. Nielsen common stock trades on NYSE under the ticker symbol "NLSN."

7.      Defendant David Kenny has been CEO and a director of the Company since 2018.

8.      Defendant James A. Attwood, Jr. has been a director of the Company since 2006. Defendant Attwood has served as Chairperson of the Board since November 2019.

9.      Defendant Thomas H. Castro has been a director of the Company since February 2020.

10.      Defendant Guerrino De Luca has been a director of the Company since 2017.

11.      Defendant Karen M. Hoguet has been a director of the Company since 2010.

12.      Defendant Harish Manwani has been a director of the Company since 2015.

13.      Defendant Janice Marinelli Mazza has been a director of the Company since February 2020.

14.      Defendant Jonathan Miller has been a director of the Company since July 13, 2020.

15.      Defendant Robert C. Pozen has been a director of the Company since 2010.

16.      Defendant David Rawlinson has been a director of the Company since 2017.

17.      Defendant Nancy Tellem has been a director of the Company since 2019.

18.      Defendant Javier G. Teruel has been a director of the Company since 2010.

19.      Defendant Lauren Zalaznick has been a director of the Company since 2016.

20.      Defendants Kenny, Attwood, Castro, De Luca, Hoguet, Manwani, Marinelli Mazza, Miller, Pozen, Rawlinson,  Tellem, Teruel and Zalaznick are collectively referred to herein as the "Board" or "Individual Defendants."

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

22.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Nielsen has principal executive offices located in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

24.    Nielsen, founded in 1923, is a measurement and data analytics company, collecting and delivering to clients information about what and where consumers buy, read, watch and listen to. The Company operates two business units: Global Connect focuses on what consumers buy, while Global Media focuses on what consumers read, watch and listen to. The Global Connect business brings in approximately 47% of the Company's revenues.

25.    On October 31, 2020, the Company entered into the Agreement with Advent.

26.    According to the press release issued on November 1, 2020 announcing the Proposed Transaction:

Nielsen Announces Sale of Global Connect Business to Advent International for

4

$2.7 Billion

11-01-2020

*Advent, in partnership with former TransUnion CEO Jim Peck, will accelerate Nielsen Global Connect's transformation and support its continued innovation in consumer and market measurement.*

*Nielsen to hold a conference call to discuss today's announcements as well as its third quarter 2020 financial results at 8:00 a.m. U.S. Eastern Time (ET) on Monday, November 2nd, 2020.*

**NEW YORK, and BOSTON, November 1, 2020** — Nielsen Holdings plc ("Nielsen") (NYSE: NLSN) announced today that it has signed a definitive agreement under which affiliates of Advent International ("Advent"), one of the largest and most experienced global private equity investors, in partnership with James "Jim" Peck, former Chief Executive Officer of TransUnion, will acquire the Nielsen Global Connect business for $2.7 billion (subject to working capital, cash, debt-like items and other customary adjustments). Nielsen will also receive warrants in the new company exercisable in certain circumstances. Upon completion of the transaction, Nielsen Global Connect will be a private company with the flexibility to continue investing in the development and deployment of leading-edge measurement products and solutions. The transaction was unanimously approved by Nielsen's Board of Directors.

"This is a win for both Nielsen Global Connect and for Nielsen (RemainCo), as well as for our shareholders," said David Kenny, Chief Executive Officer, Nielsen. "The sale of this business to Advent will deliver substantial value sooner than was anticipated through the planned spin-off and creates certainty for all stakeholders. The proceeds from the sale will allow Nielsen to significantly reduce debt, which will provide greater financial flexibility to execute our growth strategy and expand our role in the global media marketplace. At the same time, we are excited about this opportunity for Nielsen Global Connect and believe that moving forward as a private company will better position the business to accelerate its transformation and strengthen its market-leading position. With the support of Advent's resources and expertise, we believe the new company will create and define the next century of consumer and market measurement. We thank the entire Nielsen Global Connect team for their invaluable partnership and look forward to continuing a strong working relationship with them in the future."

Kenny added, "All of the terrific work done by so many to pursue a spin-off will position both businesses to thrive as standalone companies and will allow us to execute a smooth transaction. We are grateful for all of this dedicated work."

"Nielsen Global Connect is the gold standard in retail measurement, with exceptional insights and unrivaled scale and coverage of the global CPG and retail markets," said Peck. "As customers face a rapidly evolving marketplace, we

recognize that they have high expectations for Nielsen Global Connect to help them meet these new demands and to build on its existing core platform and other retail measurement capabilities. We intend to work with David Rawlinson and the talented management team to accelerate the delivery of new capabilities and to continue the transformation underway to build an innovative, high-performing culture acutely focused on delivering value to customers around the world."

"Advent is thrilled to partner with Jim in driving this next phase of growth for Nielsen Global Connect," said Chris Egan, Managing Partner at Advent. "Advent has invested in data and information services companies for nearly three decades, and earlier this year we teamed up with Jim to identify a compelling business in the sector where we can apply our combined experience and resources to create value. We see tremendous potential to build on Global Connect's cutting-edge platform, drawing on our global footprint and operational strength to further scale the business and advance its leadership across established and emerging markets."

David Rawlinson will remain CEO of Nielsen Global Connect through the close of the transaction and is expected to be part of the leadership team for the go-forward company. Upon close, Peck will be involved in the day-to-day strategic and operational activities of the company, which will be headquartered in Chicago, IL. In early 2021, the Global Connect business will be renamed NielsenIQ.

Nielsen will grant Nielsen Global Connect a license to brand its products and services with the "Nielsen" name and other Nielsen trademarks for 20 years following closing. Additionally, Nielsen and Advent will enter into agreements pursuant to which, among other things, Nielsen and Advent will provide certain transitional services to each other for periods of up to 24 months following closing, grant each other reciprocal licenses for certain data and corresponding services relating to that data for periods of up to five years following closing and grant each other licenses to use certain patents.

**Background on Nielsen Global Connect and Transaction Details**

Nielsen Global Connect provides consumer packaged goods manufacturers and retailers with actionable information and a complete picture of the complex and changing marketplace that brands need to innovate and grow their business. The company offers data and builds tools that use predictive models to turn market observations into business decisions and winning solutions. These data and insights provide the essential foundation that makes markets possible in the rapidly evolving world of commerce.

Nielsen plans to use net proceeds of the transaction primarily to reduce debt and for general corporate purposes. On a pro-forma basis for the transaction, Nielsen expects year-end 2020 net leverage to be under 4X. The transaction is subject to approval by Nielsen shareholders, regulatory approvals, consultation with the works council and other customary closing conditions; it is expected to close in the second quarter of 2021.

**B.  The Materially Incomplete and Misleading Proxy**

27.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Nielsen stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

28.     On December 23, 2020, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the other Nielsen stockholders. Without such information, Plaintiff and the Nielsen stockholders cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

> ***Materially Misleading Statements/Omissions Regarding the Management-***
> ***Prepared Financial Forecasts***

29.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of JPMorgan's fairness opinion, JPMorgan reviewed "certain internal financial analyses and forecasted financial information prepared by Nielsen management relating to" the Global Connect business. Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Nielsen's management provided to the Board and JPMorgan.

30.     Notably, Defendants failed to disclose the line items used to calculate Adjusted Standalone EBITDA (Post-SBC) and Free Cash Flow. The Proxy also fails to disclose who prepared the projections of unlevered free cash flows utilized by JPMorgan in its *Discounted Cash Flow Analysis*. And the Proxy fails to disclose the financial forecasts presented to the Board on April16, 2020 and show how they differ from the CIM Case. This omitted information is necessary

for Plaintiff and the Nielsen stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning JPMorgan's Financial Analyses

31.     With respect to the *Trading Multiples Analysis,* the Proxy fails to disclose the basis for selecting a multiple reference range for FV/CY 2021E EBITDA of 5.5x to 6.0x.

32.     With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the unlevered free cash flows and all underlying line items, as well as the terminal values. The Proxy further fails to disclose the basis for applying terminal growth rates ranging from 0.0% to 1.0%. In addition, the Proxy fails to disclose the individual inputs and assumptions underlying the discount rates from 8.75% to 9.75%.

33.     With respect to the *Transactions Multiples Analysis*, the Proxy fails to disclose the objective selection criteria for each transaction. The Proxy also fails to disclose the basis for selecting a multiple reference range for FV/LTM EBITDA of 6.5x to 9.0x.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

34.     The Proxy also fails to disclose material information concerning the sales process. For example, the Proxy notes that 60 potential bidders were part of the strategic alternative review from 2018 to 2019, of which 30 entered into non-disclosure agreements. Four potential bidders were part of the strategic alternative process in 2020, and three entered into non-disclosure agreements. The Proxy states that "substantially all" of the non-disclosure agreements included a standstill provision. Yet the Proxy does not state how many non-disclosure agreements did not include a standstill provision, the basis for those parties not being subject to a standstill provision, or whether the standstill provisions were the same across the board. The Proxy further fails to

disclose whether any of the standstill provisions are still in place, or if any standstill provisions have been waived.

35.     In January 2019, according to the Proxy, "several" parties submitted indications of interest. The Proxy does not disclose how many were received and, if more than the four described, the terms of those indications of interest. Between January 2019 and October 2019, Nielsen negotiated terms of potential transactions and provided due diligence to those parties that had submitted indications of interest. Again, the Proxy does not disclose how many parties that included.

36.     The Board changed course in November 2019, deciding to spin off the Global Connect business instead of selling the Company or the unit. On November 6, 2019, Nielsen formally engaged JPMorgan as its financial advisor. The Proxy states that JPMorgan had been advising Nielsen and the Board, but the Proxy does not disclose when JPMorgan began advising the Company and the Board or why JPMorgan was not formally engaged until November 2019.

37.     The Proxy notes that between November 2019 and June 2020, financial sponsors and strategic parties contacted JPMorgan and the Company about a transaction involving the Global Connect business. However, the Proxy did not disclose how many financial sponsors and strategic parties made contact about a potential transaction.

38.     On April 30, 2020, the Board created the Finance Committee as part of an agreement with Elliott Management Corporation, a large Nielsen stockholder. The Proxy does not disclose the authority of the Finance Committee, nor the duties or responsibilities of the Finance Committee.

39.     JPMorgan discussed valuations and analyses with the Finance Committee and Board, yet those were not disclosed. That includes the preliminary valuation adjustments included

by Bidder D and Advent in their respective proposals as discussed at the Finance Committee on September 15, 2020; the preliminary valuation adjustments included by Bidder D and Advent in their respective proposals as discussed with the Finance Committee on October 5, 2020; and the preliminary valuation adjustments included by Advent in its indication of interest, the forecasted financial information cases, and the illustrative preliminary standalone valuation of the Global Connect business as discussed with the Board on October 8, 2020.

40.     Finally, the Proxy states that JPMorgan holds "less than 2%" of Nielsen's outstanding common stock. Given that it received $20 million in fees from Nielsen in the two years prior to October 20, 2020 and $45 million in fees from Advent in the same time period, and that JPMorgan would receive a total of $25 million from Nielsen just for its service as financial advisor to Nielsen in relation to the Proposed Transaction, stockholders need to know exactly how much Nielsen stock JPMorgan holds.

41.     This information is necessary to provide Plaintiff and Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff and the other Nielsen stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

42.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

43.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the

Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

44.     Further, the Proxy indicates that on October 29, 2020, JPMorgan reviewed with the Board its financial analysis of the Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated October 31, 2020, to the effect that the Proposed Transaction was fair, from a financial point of view, to Nielsen stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning JPMorgan's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

45.     Plaintiff and the other Nielsen stockholders are immediately threatened by the wrongs complained of herein and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Plaintiff and the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Defendants have filed the Proxy with the SEC with the intention of soliciting Nielsen stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material

information referenced above.

48.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Nielsen, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

49.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Nielsen's Global Connect business and the financial analyses performed by JPMorgan in support of its fairness opinion; and (iii) the sales process.

51.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that JPMorgan reviewed and discussed its financial analyses with the Board on  October 29, 2020, and further states that the Board relied upon JPMorgan's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that

the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

52.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the other Nielsen stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Nielsen within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Nielsen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause

13

the statements to be corrected.

56.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

57.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B.    In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 15, 2021                    **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*